IN THE

# SUPREME COURT

OF THE

# STATE OF NEW-YORK,

IN MAY TERM, 1823, IN THE FORTY-SEVENTH YEAR OF OUR INDEPENDENCE.

---

## R. M. MALCOM, demandant, *against* GEORGE P. ROGERS, tenant.

WRIT OF RIGHT, in this form : " *The People of the State of New-York,* To the Sheriff of the city and county of New-York : Greeting. Command *George P. Rogers,* that justly and without delay, he render unto *Richard M. Malcom,* the one equal undivided tenth part ; and also the one equal undivided ninth part of an equal undivided tenth part of two messuages and two acres of land, with the appurtenances, in the second ward of the city of *New-York,* in the county of *New-York,* which the said *Richard M. Malcom* claims to be his right and inheritance ; and whereof he complains that the said *George P. Rogers* unjustly deforces him ; and unless he shall so do, and if the said *Richard M. Malcom* shall give you security to prosecute his claim, then summon, by good summoners, the said *George P. Rogers,* that he be before our Justices of our Supreme Court of Judicature, at the

*Proclamation of summons in a real action must be at the church in the town or ward nearest the lands, and be so returned. But if not so returned the Sheriff may amend. A personal service renders proclamation unnecessary.—— The manner of service should be plainly expressed in the return, which cannot be aided by intendment. If the*

return to a *writ of right* be defective, an *alias* summons goes instead of a *grand cape.*

Proceedings in a writ of right : The writ—return—the right and mode of amending—*præcipe* for appearance—*count,* and manner of counting—*special imparlance,* and minutes of the Court.

The appearance, for the purpose of objecting to the return of a writ, is not a waiver of the defect.

NEW-YORK,
May, 1823.

MALCOM
v.
ROGERS.

*City Hall* of the city of *New-York*, on the first *Monday* of *May* next, to shew wherefore he hath not done it. And have you then there the summoners, and this writ. Witness, AMBROSE SPENCER, Esquire, our Chief Justice, at the Capitol in the city of Albany, the first Monday of January, in the year of our Lord one thousand eight hundred and twenty-three.

*Fairlee, Bloodgood, & Breese,* Clerks.

*Charles I. Doughty,* Att'y.

On this writ the *Sheriff* returned as follows : " Received the seventh day of *February*, 1823.—Pledges of prosecution, *John Doe & Richard Roe.*—Summoners of the within named George P. Rogers, *James Shaw & George Seaman.*— And after *the aforesaid summons made,* to wit : at the most usual door of the Episcopal Church, in *Beekman Street,* called *St. George's Chapel,* in the *second ward* of the city of *New-York,* within which the tenements within mentioned do lie, upon the Lord's day, to wit : on the *twenty-third* day of *February,* in the year of our Lord, 1823, immediately after divine service and sermon in the said Church was ended, I did cause publick proclamation of the aforesaid summons to be made according to the form of the statute in such case made and provided.

The answer of *P. H. Wendover,* Sheriff."

Now, upon the *quarto die post,* (8th *May*)

*P. W. Radcliff,* for the demandant, produced the above writ, with the return endorsed, and moved that the tenant be called ; and in default of his appearing, that a *grand cape* might issue.

*W. Slosson* and *T. A. Emmet,* opposed the motion for a *grand cape,* and proposed to shew that the summons as stated in the return, was defective, and the demandant entitled to an *alias summons,* merely ; and they referred to the case of *Searle* v. *Long,* (1 *Mod.* 248,) and *Furnis* v. *Waterhouse,* (*id.* 197.)

*Radcliff*, insisted that the tenant could not avail himself of a defective summons in this manner. The proper course is to object this by plea of *non-summons*, and support it by wager of law. But here the defendant claims a right to qualify his appearance, and comes to shew that he is under no obligation to appear. His appearance is a waiver of all defects in the return ; authorizes us to treat him as in Court, and to count against him.

*Emmet*, remarked that where the very question is, whether process shall issue for non-appearance, the only mode of objecting is by way of pointing out the defect which renders his appearance unnecessary. This we have a right to do, at least, as *amici curiæ ;(a)* to which the Court agreed ; and the counsel for the tenant then objected, that the return did not state *the church*, at which proclamation was made, to be the one *nearest the land*, which they insisted was necessary, unless it appeared upon the face of the return that there was but *one church* in the *ward* where the land lies. In *Searle* v. *Long*, which was a *quare impedit*, and a proceeding upon the statute of *Marlebridge*, the Court held that actual notice to the tenant was not enough ; and because it was not in the form allowed by law, the Court set aside the subsequent proceedings ; and in *Furnis* v. *Waterhouse*, the *grand cape* was superseded, because the return of the summons was not according to the 31 *Eliz.* (*cap.* 3.) They agreed that this return was according to the English form ; but our statute (*Sess.* 10, *c.* 50. *s.* 21, 1 *R. L.* 88.) differs from the English, and with reason ; for in England there is but one *church* or *chapel* in a *parish* or *town*. *Parish* implies the precinct attached to a church, (*Com. Dig. Parish B.* 2. 1 *Bl. Com.* 112.) and the forms of English returns given in the books, relate to lands which lie in a *parish*. The national religion is there a part of the law of the land, and being a national establishment, the ecclesiastical division of the country, with the church attached to it, are as certain and as well defined by law as its civil divisions.(*b*) There, when

(*a*) And vid. *Wheeler* v. *Lampman*, 14 *John.* 481.

(*b*) Vid. 1 *Bl. Com.* 112. *Com. Dig. Parish*, B. 1.

NEW-YORK,
May, 1823.

MALCOM
v.
ROGERS.

the statute speaks of *churches*, it means those of the estab-
lished religion, and can have no reference to the *meeting
houses* of the dissenters. Hence, it is sufficient to return, in
the language of their statute, that the proclamation was
made *at or near the most usual door of the church or chapel
of that town or parish where the land doth lie.* This must,
of necessity, relate to the nearest church within the precinct
contemplated by the statute. But the same certainty could
not be attained here, where all churches are on the same foot-
ing; accordingly, the phraseology of our statute is different.
It provides, that where there is more than one church, proc-
lamation *shall be* made at the one *nearest* the lands; and if
none in the town, then at the nearest church in the county;
and as there might have been, and were, for aught that ap-
pears, several churches within the 2d ward, where these lands
lie, the return should have stated it to be the nearest church
in the ward to the lands, or have shewn but one church in
the ward. Suppose the proclamation had been made at a
church out of the ward; ought not this also to have been
excused by a return that there was no church in the ward?
Nor can the defect here be supplied by intendment or con-
struction in favour of the act of the *Sheriff*. There was as
much room for favourable presumptions in the case of *Fur-
nis* v. *Waterhouse*, as here, and yet none were allowed. Nor
will the Court intend, from this return, that the service was
*personal,* so as to supersede the necessity of proclamation.
Indeed, the summons cannot be a personal one. It must be
upon the land, and this appears from *Allen* v. *Walter,* (*Hob.*
133. 2 *Saund.* 43, *n.* 1, and *vid.* also, *W. Jones* 7, *pl.* 6.)
True, the case in *Hobart,* was in dower. But this being a
proceeding in nature of a writ of right, shews the mode of
service applicable to both; and further, as to the manner of
service, they referred to *Com. Dig. Process, D.* 3. *Archbold*
421. *title, Writs in nature of a writ of right.* 2 *Saund.* 44, *n.*
4. But if a personal summons be sufficient, this return rath-
er authorises a presumption against, than for one. It is, that
proclamation was made *secundum formam statuti,* and it is
only in cases of summons upon the land, that the statute re-
quires proclamation.

NEW-YORK,
May, 1823.

MALCOM
V.
ROGERS.

*Radcliff.* It is agreed that this return accords with the English precedents, ancient and modern. A form of the English return may be found in *Imp. Shff.* 402. 3 *Wils.* 553. 2 *Saund.* per *Serj. Wms.* 43, *n.* 1, in connexion with *id. p.* 44, *n.* 4. *ch.* 3 *pl.* 596. The statute does not require a summons upon the land. It is true, this was the ancient practice, and was allowable where every possession was open and notorious, and every man was presumed to occupy his own land. But a personal summons was always sufficient. (*Booth on R. A.* 4, 5.) In the state of modern possessions it is many times essential, to avoid imposition A summons on the land would be very imperfect in this country, for the purposes of notice ; and where the summons is personal, proclamation is unnecesary. This is required only where the summons is upon the land. As the statute was avowedly for avoiding secret summonses, there can be no motive for proclamation where the summons is personal. As to the church, the statute is merely directory. The same certainty *is* not required in a return as in pleading, (*Imp. Shff.* 378,)(c) and every fair intendment is to be made in support of the acts of a ministerial officer. He is presumed to comply with his duty until the contrary expressly appear,(*d*) and when he returns, the Court will not presume him guilty of an *equivoque.* The English statute is not confined either to *churches* or *parishes.* The proclamation is to be made at the door of the *church* or *chapel* of that *town* or *parish*, where the land lies, yet a return in the general form given by the precedents has always been holden good. And according to 2 *Saund.* 43, *n.* 1, it is enough, according to the modern practice, to return, that the *Sheriff* had made proclamation *of the said summons according to the form of the statute, &c.*

But should the Court be against the return, we then ask leave to amend, according to the fact, the summons being, in truth, regular.

Another answer to these objections is, that the defendant has a right to avail himself of them, if they are valid, by plea of *non-summons*, and where a party may plead a matter, he cannot take advantage of it by motion.

(*c*) *Vid.* 8. *Co.* 127, 128.      (*d*) *Vid.* 14 *John. Rep.* 184.

NEW-YORK,
May, 1823.

MALCOM
v.
ROGERS.

*The Court* took time for advisement, which they declared should not prejudice the demandant; but that he might take the rule they should finally make, as of the *quarto die post.* And now,

*May* 12*th*—The opinion of the Court was delivered by WOODWORTH, J. He remarked that there was nothing in the return, or in the nature of the case, from which to infer a *personal* service on the tenant. Had such service in fact taken place and been returned, we think the proclamation would have been unnecessary ;(e) but here is evidently the common proceeding by summons on the land, and proclamation. It does not appear that such proclamation was at the church *nearest* the lands, though at one in the *Second ward,* where they lie. The return of the *Sheriff* is, that he caused proclamation to be made *at the most usual door of the Episcopal Church, in Beekman-Street, called St. George's Chapel, in the Second ward, &c.* We think, that to make the return conform to the statute of this state, he should have gone further, and shewn by the return, either, that *St. George's Chapel* was the church within the ward *nearest* the land, or that it was the *only* church within the ward. No doubt, that where an omission of duty would be culpable, the officer will, in general, be presumed to have done his duty. But we think the rule does not extend to this case. The statute requires great strictness in this proceeding of the officer ; and his compliance with it ought not to be left to inference, but should plainly appear upon his return. The rule for a *grand cape* is, therefore, refused, and the demandant must proceed by an *alias summons,*(f) unless *St. George's Chapel* was, in fact, the nearest church in the ward. If so, the *Sheriff* may amend according to the truth.

At the opening of the Court on the 13th, *Radcliff* mentioned that, at his request, the *Deputy Sheriff,* who had served the writ, was in attendance to amend his return. This was, perhaps, a matter of course under the rule which had been made ; but, as it was convenient, he requested, for grea-

(e) *Dalt. Sheriff,* 224-5. *Imp. Sheriff,* 402.
(f) *Com. Dig. Process, D.* 2.

ter caution, permission to amend it in open Court, under the immediate direction of the *Justices.*

*Ulshoeffer* and *T. A. Emmet,* for the tenant, asked to be heard against the principle of the amendment. As it could not be known what disposition the Court would make of the other objections, the attention of the counsel had not been directed to this branch of the discussion. Leave being granted, they contended that no amendment could be allowed in this case. The statute is, that *if the summons shall not be proclaimed and returned, then no grand cape to be awarded, but an alias or pluries snmmons, as the case shall require.* The process is not vitiated ; the effect is merely a change of process, and the action proceeds. Now, in circumstances much more unfavourable to the demandant ; indeed, where the omission is fatal to his *remedy,* and even his *right,* the Courts have refused amendments. In *Charlwood* v. *Morgan,* (4 *Bos. & Pull.* 64,) a motion was made to amend the *count* in a writ of right, so as to correct the pedigree. This the Court refused, though *Mansfield, C. J.* said they would have been willing to amend, had not this been a proceeding by *writ of right,* which he said had always been discouraged, and tenants had been allowed to avail themselves of every advantage to defeat the claims of demandants. And in this all the Justices agreed. And upon the same principle they refused the demandant leave to discontinue. In *Maidment* v. *Jukes,* (5 *Bos. & Pull.* 429,) the Court, on the authority of *Charlwood* v. *Morgan,* ordered a side bar rule to discontinue, to be set aside with costs. In *Dumsday* v. *Hughes & Bedford,* (3 *Bos. & Pull.* 453,) the Court refused an amendment of the *count,* in a writ of right, after demurrer argued, although cases of amendment were cited in *formedon* and *dower,* and in *common recoveries.* This case, refers the strictness or liberality of the Court, in allowing amendments, to the nature of the action. *Dower,* say the Court, is favoured in the law. But the cases cited shew that the remedy by writ of right has always been holden to be *stricti juris.* And the Courts have refused amendments, even where the demandant will, in consequence, be *barred* by the *statute of limitations.*

Again, this return being defective, the tenant was not bound to appear. There is no means of compelling his appearance except by an *alias.* The Court have not now the power, by an amendment, *nunc pro tunc,* to make the defendant a defaulter by relation, on the *quarto die post,* and subject him to a *grand cape.*

*Radcliff,* said that the cases in which Courts would discourage remedies were those where the party had a choice between different modes of redress. It is, really, very singular that the legislature should give a remedy, and yet that it should be the duty of the Court to set about defeating it by requiring an almost impracticable strictness, not applicable to any other case. The authorities cited relate to the amendment of the *count,* or relief by discontinuance, against the omission of a *party ;* but the application here, is to amend the return of the *officer* who served the process. Nor is it competent to object that we are not now on the *quarto die post.* The delay for advisement was declared by the Court to be without prejudice, and our proceedings are to be entered *nunc pro tunc.*

*Slosson,* observed that the demandant must offer himself the first day, or a *ne recipiatur* may be entered. He must then appear with a *regular* return. If the Court had power to amend on the *first* day, they cannot do it on the *quarto die post.* On that day, the return being insufficient, the tenant may depart without being guilty of a contempt.

*Radcliff,* denied that the omission of the demandant to offer himself, would prevent his being afterwards received to prosecute. It is true, we are demandable on the first day, and if we do not appear, may be shut out by a *ne recipiatur.* (g.) But it does not follow that we must come with a suffi-

(g) The tenant in a writ of right is only demandable on the *quarto die post ;* but the demandant is liable to be called on the *primo die placiti ;* and in case of his non-appearance, his default may be entered, which, if he does appear and excuse, on the *quarto die post,* he is liable to a nonsuit.— *Swift* v. *Livingston,* 2 *John. cas.* 112. *Clobery* v. *The Bishop of Exon,* *Carth.* 173. *Co. Litt.* 139. b. In 1 *Bulstr.* 35. it is said, "If it be not in a writ of right, no man is demandable, till the *quarto die post.*"

cient return. If this be deficient, it is the fault of the officer.

WOODWORTH, J. The ancient strictness, which prevailed in these real actions, has been much relaxed by the late decisions.(*h*) I remember that at the last term, a default and *grand cape* were taken, which it was moved to set aside. This was opposed on the ground of the great strictness which prevails in real actions. But the default was set aside. I should say, then, *a fortiori*, that relief ought to be granted here, in a case which is a mere mistake of the officer. There is no difficulty here from the *quarto die post* having elapsed. The demand of the tenant was made on that day, but opposed for a defect in the return; and the motion has been adjourned from day to day.

SUTHERLAND, J. It would, indeed, be a disgraceful rule in our jurisprudence, which would forbid an amendment in this mere mistake in form, by the officer, whether the effect be to delay the demandant or turn him out of Court. As to the difficulty made in point of time, every thing done now, is as if it had been ordered on the *quarto die post*.(*i*)

SAVAGE, Ch. J. This application is addressed to the sound discretion of the Court. And this is the ground on which it is placed, by the cases cited from the English books. It was in the exercise of this discretion, that the application to amend the *count*, was rejected by the Court of Common Pleas.(*j*) Admitting the reason of those cases to apply to

(*h*) Vid. *Van Bergen* v. *Palmer*, 18 *John. Rep.* 504.

(*i*) In *Sacket* v. *Lothrop*, 1 *John. Cas.* 249, the writ was not returned on the *quarto die post*. The Sheriff being ruled to return the writ *sedente curia*, returned it, and a motion was then made to call the tenant. The Court said that the tenant, if he meant to put the demandant out of Court, should have entered a *ne recipiatur*, on the *quarto die post*; and by the rule to return the writ *sedente curia*, the demandant is deemed as continuing in Court from day to day, during the term. So the tenant was called after the *quarto die post*.

(*j*) In *Charlwood* v. *Morgan*, (4 *Bos. & Pul.* 64,) *Mansfield*, C. J. says, " I am of opinion, that unless some precedent for such an amendment can be produced, the soundest exercise of our discretion, will be, not to allow the amendment." *Heath*, J. says, speaking of *Dumsday* v. *Hughes*, (3 *Bos. & Pul.* 453,) " We did not choose to say at that time, that in no case

NEW-YORK,
May, 1823.

MALCOM
v.
ROGERS.

this case, which is distinguishable as being the mistake of an *officer*, yet the strictness of the ancient practice has been disregarded in the modern decisions.

Rule to amend granted.

*Radcliff*, then, in presence of the Court, and Deputy Sheriff, amended the return, by inserting the words, " and which church is the church nearest to the said tenements, in the ward aforesaid," between the words "lie" and "upon." (*k*)

*Slosson*, then said he should appear for the tenant; and he gave to the Clerk in Court a *præcipe* for appearance.(*l*)

whatever, would an amendment be allowed, since a fit case might, by possibility, be brought before us." It is plain, from the reasoning of *Mansfield*, C. J. how he would have thought of this question, had the statute 32 *H.* 8. *c.* 2, 3, like our statute, (*Sess.* 24, *s.* 183, *c.* 2, 1 *R. L.* 185,) limited the prosecution of writs of right to 25, instead of 60 and 30 years. "Every one," he says, " knows the consequence of overturning titles, which have been supposed to exist for near sixty years. Many great purchasers consider 60 years possession, as the best title which can be made; and it has often been lamented, by eminent lawyers, that the period has not been shortened; who have thought that 60 years was too long a time for titles to remain *in dubio*.

(*k*) Note, that the return of the Sheriff being erroneous, or not good, yet it may be amended by the Court in divers cases; yea, although such return were made in another Sheriff's time. (*Dalt.* 189, cites 22 *H.* 6. 45. 33 *H.* 6. 47. 37 *H.* 6. 12, and 2 *H.* 5. 8.) And the Court may cause the old Sheriff, (in whose time such return was made,) or his Under Sheriff, or his Clerk or Deputy, to amend the same; or any Clerk of the place. (*Ibid.* cites *Fitz. Amendment*, 40, 33 *H.* 6. 47.)

(*l*) It was thus:

NEW-YORK SUPREME COURT.

*George P. Rogers*, tenant,
  ads.      } *Præcipe* for appearance.
*Richard M. Malcom*, demandant.

*City and County of New-York, ss.*—Appearance for *George P. Rogers*, tenant, at the suit of *Richard M. Malcom*, demandant.

      *Winter* & *Bolton*, Attornies for tenant.

*Radcliff*, thereupon, *counted* against the tenant, by produ- cing and filing with the Clerk, a written *count*, and memo- randum of warrant of attorney,(*m*) and giving *Slosson*, the counsel for the tenant, a copy.

(*m*) Which was thus :

NEW-YORK SUPREME COURT, of *May* term, in the year of } our Lord one thousand eight hundred and twenty-three. }

*City and County of New-York, ss.—Richard M. Malcom*, by *Charles J. Doughty*, his attorney, demands against *George P. Rogers*, the one equal undivided tenth part, and also the one equal undivided ninth part of another equal undivided tenth part, of two messuages and two acres of land, with the appurtenances, in the *Second ward* of the *City of New-York*, in the *County of New-York*, as his right and inheritance, by the *Writ of the People* of the *State of New-York*, of right—And thereupon the said *Richard M. Malcom* says, that *William Malcom*, deceased, the late father of the said *Richard M. Malcom*, and of one *William A. Malcom*, now also deceased, was seized of the whole of the messuages and land aforesaid, with the ap- purtenances, in his demesne, as of fee and right, in the time of peace, to wit, within twenty-five years now last past, exclusive of the time during which the said *Richard M. Malcom* and *William A. Malcom* were respectively within the age of twenty-one years, by taking the *esplees* thereof to the value, &c. and died thereof seized, without devising the same ; and having lawful issue, three sons and seven daughters, to wit, *Samuel B., Frances, Elizabeth C., Ann S., Catharine B., Margaret B., Agnes, Abigail,* and the said *Richard M.* and *William A.* and no other lawful issue. And thereupon the right to one equal undivided tenth part, above demanded of the said messuages and land, with the appurtenances, descended and came from the said *William Malcom* to the said *Richard M. Malcom*, then an infant, within the age of twenty-one years, who now demands the same, as son and heir, in respect to the said one equal undivided tenth part, of the said *William Malcom*, deceased : and thereupon, also, one other equal undivided tenth part of the said messuages and land, with the appurtenances, descen- ded and came from the said *William Malcom*, to the said *William A.* then also an infant, within the age of twenty-one years, also, as son and heir, in respect to the same, of the said *William Malcom*, deceased. And because the said *William A.* died without issue, after the death of his said father, leaving the said *Richard M., Samuel B., Frances, Elizabeth C., Ann S., Catharine B., Margaret B.,* and *Agnes*, his said brothers and sisters, and *William M.* the only lawful child and heir of his said sister *Abigail*, who was then deceased, and no other brother or sister, nor any child or children of any other brother or sister, the right to one equal undivided ninth part of the said last mentioned one equal undivided tenth part, which so as aforesaid descended and came to the said *William A.* descended and came to the said *Richard M. Malcom*, as brother and heir, in respect to the same, of the said *William A.* deceased, to wit, within twenty-five years since the said last mentioned one equal undivided tenth part of the said messuages and land, so descended to the said *William A.* exclusive of the time during which, as well the said *William A.* as the said *Richard M. Mal-*

*Slosson,* then produced, and filed with the Clerk, a *special imparlance.*(n)

The Clerk was then furnished, by counsel, with this form, to be entered in the minutes of the Court; which was entered accordingly :

*Richard M. Malcom,* demandant,
        v.
*George P. Rogers,* tenant.

*May 8th,* 1823. The demandant, *Richard M. Malcom,* being present here in Court, on motion of Mr. *P. W. Radcliff,* of counsel, in behalf of Mr. *Doughty,* attorney for the said demandant, *Ordered,* that the demandant's appearance be and the same is hereby entered ; and thereupon, the tenant having been duly called, appeared in Court, by Messrs. *Winter* and *Bolton,* his attornies, and his appearance having been duly entered, the demandant, in open Court, *counted* against the tenant ; and the tenant thereupon prayed a *special im-*

*com* were, respectively, within the age of twenty-one years. And the said *Richard M. Malcom* now also demands the same, as brother, and heir in respect to the same, of the said *William A.* deceased, and that such is his right, he offers, &c.

          *Doughty,* Att'y for demandant.
          *P. W. Radcliff,* of Counsel for demandant.
Pledges to prosecute, *John Doe* & *Richard Roe.*

*City and County of New-York,* ss.—*Richard M. Malcom* puts in his place, *Charles I. Doughty,* his Attorney, against *George P. Rogers,* in a plea of land.

(n) Which was thus :

" SUPREME COURT.

*George P. Rogers,* tenant,
    ads.          } *Special imparlance.*
*Richard M. Malcom,* demandant.

And the said *George P. Rogers,* by *Gabriel Winter* and *Thomas Bolton,* his attornies, comes and defends his right, &c. and prays leave to *imparl,* until the first *Monday* in *August* next, before the said Justices of the People of the state of *New-York,* of the Supreme Court of Judicature of the same People, at the *Academy,* in the town of *Utica,* in the county of *Oneida,* and he hath it, saving all objections, as well to the jurisdiction of the Court, as to the writ and count."

Further, as to the form and effect of this *imparlance,* and when it will be granted, vid. *Booth,* 36, 37. *Whitbeck* v. *Shoefelt,* 9 *John. Rep.* 265. *Haviland* v. *Bond,* 4 *id.* 309. *Haines,* v. *Budd,* 1 *John. Cas.* 335.

*parlance*, until the first *Monday* of the next term, at the *Academy* in the town of *Utica*, in the county of *Oneida*, which is granted to him, &c. And the same day is given to the demandant, at the same place.

Similar proceedings were had against *four other* tenants, at the suit of *the same* demandant.