**Woodrow YOKUM and Wanda Yokum, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 322–85L.**

United States Claims Court.

Feb. 28, 1986.

Richard W. Cardot, Elkins, W.Va., for plaintiffs.

Alan Brenner, with whom was Asst. Atty. Gen. F. Henry Habicht II, Washington, D.C., for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

Consideration has been given to the defendant's "Motion To Dismiss," filed August 28, 1985, to the plaintiffs' response to the motion, filed October 29, 1985, to the defendant's reply, filed November 29, 1985, and to a supplemental paper filed by the plaintiffs on December 27, 1985.

As both parties have submitted material of an evidentiary nature in support of their respective positions, it is necessary to consider the defendant's motion as one for summary judgment. In this connection, it should be noted that, under RUSCC 56(c), a summary judgment can be granted by the court if—and only if—the material submitted to the court shows that there is no genuine issue as to any material fact between the parties, and that the moving party is entitled to a judgment as a matter of law.

The complaint presents two separate, but related, claims for the consideration of the court. One might be called "the storage claim," and the other might be referred to as "the conversion claim." These claims will be discussed separately in connection with the defendant's pending motion for summary judgment.

## I. *The Storage Claim*

### Introduction

The undisputed facts relating to the storage claim are few in number, and they will be summarized in the next three paragraphs of the order.

The plaintiffs, Woodrow Yokum and Wanda Yokum, are husband and wife; and they are the owners of certain real estate located in Beverly District, Randolph County, West Virginia (this real estate will usually be referred to hereafter in the order as "the Yokum farm").

On or about February 10, 1967, federal officers went on the Yokum farm and, after serving search warrants, the officers seized a number of items of personal property that were located on the farm. Among the seized items were 15 pieces of heavy equipment, including an International Gradeall, that were located in open fields on the farm. The federal officers tagged these pieces of heavy equipment with seizure notices and left them in the open fields. Other seized items were located in a barn on the Yokum farm. The barn was padlocked by the federal officers, and a seizure notice was affixed to the barn.

Until May 1984, the 15 pieces of heavy equipment, with seizure notices attached, remained in the open fields on the Yokum farm, and other seized items remained in the padlocked Yokum barn, with a seizure notice affixed to the barn. Finally, in May 1984, federal personnel removed all the seized property from the Yokum farm, with the permission of the Yokums.

The plaintiffs seek to recover $124,682 for the open storage of the 15 pieces of heavy equipment and $20,400 for the use of the barn.

### Previous Litigation

The present case is the latest aspect of a long chain of interrelated litigation.

The search warrants mentioned in the present complaint were served at the time of plaintiff Woodrow Yokum's arrest for alleged violations of federal law. Later, Mr. Yokum was convicted on August 5, 1968, in the United States District Court for the Northern District of West Virginia: on six counts charging him with interstate transportation of stolen motor vehicles, in violation of 18 U.S.C. § 2312 (1964); on three counts charging him with having sold government-owned property, in violation of 18 U.S.C. § 641 (1964); and on one count charging him with having knowingly transported in interstate commerce stolen property with a value of more than $5,000, in violation of 18 U.S.C. § 2314 (1964).

On appeal to the United States Court of Appeals for the Fourth Circuit, the appellate court reversed the conviction as to one count involving the alleged sale of government-owned property, but affirmed the conviction as to the nine other counts. *United States v. Yokum*, 417 F.2d 253 (4th Cir.

1969), *cert. denied*, 397 U.S. 907, 90 S.Ct. 902, 25 L.Ed.2d 87 (1970), *reh'g denied*, 397 U.S. 1030, 90 S.Ct. 1256, 25 L.Ed.2d 543 (1970).

Woodrow Yokum subsequently filed a civil action, No. 73–105–E, in the United States District Court for the Northern District of West Virginia, asking for the return of the seized property or, in the alternative, for $400,000 as representing the alleged value of the property. The complaint was dismissed by the District Court, on the ground that it did not have jurisdiction over the action because the claim against the United States was for an amount in excess of $10,000.

On January 2, 1975, Woodrow Yokum instituted an action in this court's predecessor, the United States Court of Claims, seeking to recover the sum of $400,000, alleged to be the reasonable value of the seized property, to which Mr. Yokum claimed ownership and which he alleged was taken from him by the defendant during the months of February and March 1967. The defendant filed a motion for summary judgment, based on the ground that, as the alleged taking occurred not later than March 1967, the plaintiff's claim was barred by the 6-year statute of limitations (28 U.S.C. § 2501) in 1973. In an order dated November 21, 1975, the Court of Claims held that the plaintiff's action was barred by the 6-year statute of limitations, granted the defendant's motion for summary judgment, and dismissed the plaintiff's petition (now complaint). *Woodrow Yokum*, 208 Ct.Cl. 972, 529 F.2d 532 (1975), *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 80 (1976).

In the meantime, the Yokum farm was transferred by the Yokums to Sherri L. Riggleman, their daughter, by deed dated December 23, 1968, subject to a life estate retained by Wanda Yokum. On April 19, 1973, Wanda Yokum released her life estate to Sherri L. Riggleman.

On January 2, 1975, Sherri L. Riggleman and her husband, Fred L. Riggleman, sued the United States in the Court of Claims, seeking compensation for the storage of the seized property on the Yokum farm. The United States filed a motion for summary judgment. In an order dated September 29, 1977, the Court of Claims granted the Government's motion for summary judgment and dismissed the complaint. *Fred L. Riggleman and Sherri L. Riggleman*, 215 Ct.Cl. 865, 566 F.2d 1190 (1977). With respect to the period between December 23, 1968 (the date on which the Yokum farm was transferred to Sherri L. Riggleman by the Yokums) and April 19, 1973 (the date on which Wanda Yokum released her life estate to Sherri L. Riggleman), the court held (at 867–68) that Sherri L. Riggleman, as a holder of a remainder interest, was not entitled to any compensation for the use of the Yokum farm, but only to compensation for any waste or damage to the property, and that there was no allegation in the complaint concerning waste or damage. As for the use of the Yokum farm after April 19, 1973 (the date on which Wanda Yokum released her life estate to Sherri L. Riggleman), the court (at 868–69) denied the Rigglemans' claim because the material before the court showed that, both before and after April 19, 1973, the Government sought, and was refused, permission to remove the stored property from the real estate.

On December 28, 1977, Wanda Yokum, asserting that she had been the owner of the Yokum farm since December 23, 1968, sued the United States in the Court of Claims. The petition (complaint) in that case contained allegations, made familiar in the earlier cases, concerning the seizure on or about February 10, 1967, by federal officers of various items of personal property pursuant to search warrants, the storage by the federal personnel of certain equipment in open fields on the Yokum farm and the storage of other seized property in the barn on the farm. The complaint further alleged that the United States continued to use for storage purposes the open areas and the barn where the seized property was stored, and deprived Mrs. Yokum of the use of such open

areas and barn, until May 22, 1972. The United States filed a motion to dismiss.

In the *Wanda Yokum* case, the Court of Claims, in an order dated September 29, 1978 (218 Ct.Cl. 650 (1978)), granted the defendant's motion and dismissed the complaint. The material before the court in that case showed that the various items of personal property involved in the case were found by federal officers on the Yokum farm and in the barn when the search warrants were executed; that the Yokums, from the very beginning, demanded removal of the seizure notices and the removal of the padlock from the barn; and that the Government took the position that the Yokums must prove their ownership of the seized property before it would be turned over to them, whereas the Yokums took the position that, as the seized property was found on their premises, they were entitled to it in the absence of proof that such property was owned by others. The court noted that this controversy over the ownership of the seized property had not been resolved at the time of the court's order.

The court in the *Wanda Yokum* case further stated as follows (218 Ct.Cl. at 653):

> * * * In not removing the articles before it did, * * * defendant was simply yielding to that extent to the Yokums' own version of their rights. There was nothing adverse to the Yokums in the choice of a temporary physical location for the disputed articles. The Yokums lost nothing by it. The measure of compensation in eminent domain is what the landowner has lost, not what the taker has gained. * * * Plaintiff has not been denied just compensation and therefore no breach of the fifth amendment has occurred. [Citation omitted].

## Discussion

On May 26, 1978, Sherri L. Riggleman, joined by her husband, transferred the Yokum farm to Woodrow and Wanda Yokum, the present plaintiffs.

As previously stated, the complaint in the present case was filed by Woodrow and Wanda Yokum in this court on May 29, 1985. The complaint asserts that the seized property was stored on the Yokum farm without the permission of the plaintiffs. The complaint then contends that the Government, by its actions, "has taken away property rights of the plaintiffs without due process," and that the Government has denied, and continues to deny, the plaintiffs any compensation "for storage and use" of the plaintiffs' land and building.

■ In connection with the plaintiffs' contention that the Government has violated the due process clause of the Fifth Amendment to the Constitution by using part of the Yokum farm without compensating the plaintiff, it must be borne in mind that not every violation by the Government of some provision of the Constitution gives rise to a compensable claim against the Government. *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). This court's predecessor, United States Court of Claims, held specifically that a violation of the due process clause by the Government in its dealings with private persons does not provide a basis for such a person to sue the Government for monetary damages. *Inupiat Community of the Artic Slope v. United States*, 230 Ct.Cl. 647, 662, 680 F.2d 122, 132 (1982); *Mack v. United States*, 225 Ct.Cl. 187, 192, 635 F.2d 828, 832 (1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). Therefore, this court, which is bound by the decisions of the Court of Claims, does not have jurisdiction to consider a claim for monetary damages based upon an alleged violation of the due process clause of the Constitution.

On the other hand, if the Federal Government temporarily takes land (*see United States v. General Motors Corp.*, 323 U.S. 373, 382, 65 S.Ct. 357, 361, 89 L.Ed. 311 (1945)) or a building (*see Kimball Laundry Co. v. United States*, 338 U.S. 1, 7, 69 S.Ct. 1434, 1438–39, 93 L.Ed. 1765 (1949)) and uses the land or building for a period of

time, without compensating the owner, the Government is liable to the owner under the provision of the Fifth Amendment which declares, "nor shall private property be taken for public use, without just compensation." The owner's compensation in such a situation is to be measured by the fair rental value of the land or building during the period of occupancy and use. *United States v. General Motors Corp.,* 323 U.S. at 382, 65 S.Ct. at 361. Consequently, the plaintiffs' claim in the present case will be regarded as one for just compensation because of the alleged temporary taking and use of part of the Yokum farm by the Government.

As a prelude to the discussion of the plaintiffs' storage claim, it might be helpful to review the status of the title to the Yokum farm, beginning with the time (on or about February 10, 1967) when federal officers went on the farm and, pursuant to search warrants, seized items of personal property that were located on the farm. At that time, the legal title to the Yokum farm was held by the present plaintiffs, Woodrow Yokum and Wanda Yokum. Then, from December 23, 1968, until April 19, 1973, Wanda Yokum held a life estate in the Yokum farm, with Sherri L. Riggleman, the Yokums' daughter, being the remainderman. From April 19, 1973, when Wanda Yokum released her life estate to Sherri L. Riggleman, until May 26, 1978, Sherri L. Riggleman held the legal title to the Yokum farm. Since May 26, 1978, when Sherri L. Riggleman, joined by her husband, transferred the Yokum farm to Woodrow and Wanda Yokum, the present plaintiffs have held the legal title to the Yokum farm.

■ One thing to be noted in connection with the present case is that the present plaintiffs did not have any title to the Yokum farm during the period between April 19, 1973 (when Wanda Yokum released her life estate to Sherri L. Riggleman) and May 26, 1978 (when Sherri L. Riggleman, joined by her husband, transferred the Yokum farm to the present plaintiffs). Having no title to the Yokum farm during the period

just mentioned, the plaintiffs do not have any standing on which to maintain an action against the United States for the alleged use by the Government of part of the Yokum farm during such period for the storage of property. *See United States v. Dow,* 357 U.S. 17, 20–21, 78 S.Ct. 1039, 1043–44, 2 L.Ed.2d 1109 (1958); *Lacey v. United States,* 219 Ct.Cl. 551, 560, 595 F.2d 614, 619 (1979).

■ Furthermore, with respect to the period between December 23, 1968 and May 22, 1972, the plaintiff Wanda Yokum has already sued the United States unsuccessfully for allegedly using the same portions of the Yokum farm that are involved in the present case for the storage of the same personal property that is also involved in the present case. As previously pointed out, the former Court of Claims, in the *Wanda Yokum* case, 218 Ct.Cl. 650 (1978), granted the defendant's motion and dismissed the complaint. The Court of Claims held in the *Wanda Yokum* case (at 653) that the Yokums "lost nothing" by the use of the Yokum farm as a physical location for the seized property pending a determination as to the ownership of the seized property, and, therefore, that the plaintiff Wanda Yokum was not entitled to any compensation from the Government for the alleged temporary taking by the Government of part of the Yokum farm for the storage of the seized property. In view of the relationship of husband and wife existing at all pertinent times between the plaintiff Woodrow Yokum and the plaintiff Wanda Yokum, and from the history of the ownership of the Yokum farm, as previously summarized, it is obvious that plaintiff Woodrow Yokum must be regarded as having been in privity with the plaintiff Wanda Yokum in so far as actions concerning the farm are concerned.

As the Supreme Court said in *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980), "[u]nder *res judicata,* a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.

608

* * * " Accordingly, the doctrine of *res judicata* precludes both Woodrow Yokum and Wanda Yokum from relitigating the question of the Government's liability for using part of the Yokum farm for storage purposes during the period between December 23, 1968, and May 22, 1972.

This leaves for consideration the plaintiffs' claim for the period beginning on or about February 10, 1967, and extending December 23, 1968, and the period after May 26, 1978.

The first period mentioned in the preceding paragraph, *i.e.*, from on or about February 10, 1967, to December 23, 1968, expired more than 6 years before the plaintiffs filed their complaint in the present action on May 29, 1985. This court's statute of limitations (28 U.S.C. § 2501 (1982)) provides in unequivocal language that:

Every claim of which the Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

■ This court's predecessor, the Court of Claims, operated under the same statute of limitations. Both the Court of Claims and this court have held that the institution of actions within the prescribed 6-year period is jurisdictional. *Kirby v. United States*, 201 Ct.Cl. 527, 539 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974); *Parker v. United States*, 2 Cl.Ct. 399, 402 (1983); *Gerber v. United States*, 2 Cl.Ct. 311, 315 (1983); *Ellis v. United States*, 1 Cl.Ct. 141, 143 (1983); *Lewis v. United States*, 1 Cl.Ct. 158, 160–61 (1983). The statute of limitations cannot be waived by the court. *Todd v. United States*, 155 Ct.Cl. 87, 93, 292 F.2d 841, 844 (1961).

■ Accordingly, the plaintiffs' claim for the period beginning on or about February 10, 1967, and ending on December 23, 1968, is barred by the 6-year statute of limitations.

Thus, we finally come to the period after the plaintiffs regained the title to the Yokum farm on May 26, 1978. Of course, the claim for this period first accrued on May 26, 1978, which was more than 6 years before the present action was instituted by the plaintiffs in this court on May 29, 1985. The Court of Claims, however, indicated in a footnote to the *Riggleman* case (fn. 7, 215 Ct.Cl. at 870) that a claim for the use of part of the Yokum farm for storage purposes by the Government is to be treated as a continuing claim. The court stated in part as follows:

* * * [I]n the event that the Government should fail to remove the personal property from the farm in a reasonable time after the plaintiffs grant it permission to enter upon the land for such purpose, the plaintiffs may seek leave of court to amend their petition in accordance with Rule 39 to state any cause of action that may accrue from a refusal of the Government to remove the property after permission is granted. * * *

The "plaintiffs" referred to in the footnote were Fred L. Riggleman and Sherri L. Riggleman, but the same principle would provide a basis for the present plaintiffs to sue the Government if the latter, within the 6-year period immediately preceding the filing of the plaintiffs; complaint continued to use part of the Yokum farm after being given permission to remove the seized property. The plaintiffs, however, do not allege that, after they regained the legal title to the Yokum farm on May 26, 1978, they gave the Government express permission at any time before August 1984 to remove the stored property from the Yokum farm. They merely assert that they "did not deny defendant United States the right to remove the property stored on plaintiffs' real estate," and they did not "otherwise refuse the Government * * * the right of entry to remove the property."

Uncontradicted exhibits submitted by the defendant in support of its motion to dismiss show that representatives of the defendant submitted to counsel for the Yokum-Riggleman family specific requests on May 22, 1972, March 26, 1975, and October 4, 1977, for permission to go on the Yokum farm and remove the stored property and that the requests were denied. In view of

this, it would be too much to require that government personnel be sufficiently clairvoyant to realize, beginning with May 26, 1978, that the plaintiffs were willing for federal personnel to go on the Yokum farm and remove the stored property. Consequently, we do not have in this case the situation envisioned by the Court of Claims in the *Riggleman* case, *i.e.,* that the United States might continue to use part of the Yokum farm for storage purposes for an unreasonably long period after being granted permission by the landowners to go on the farm and remove the stored property.

■ It is concluded, therefore, that the plaintiffs have failed to show any use by the Government of part of the Yokum farm for an unreasonably long period after the plaintiffs gave permission in August 1984 for government personnel to go on the farm and remove the stored property. Until permission was granted in August 1984, it must be assumed that the situation found by the Court of Claims to exist in the *Wanda Yokum* case with respect to the reason why the seized property was left on the Yokum farm and remained there—*i.e.,* assertions by the Yokums that the seized property belonged to them—continued to exist until federal personnel removed the seized property in August 1984 with the permission of the plaintiffs.

Accordingly, the plaintiffs have failed to establish any right to recover for the use of their land or barn by the Government during any part of the 6-year period immediately preceding May 29, 1985.

For the reasons previously stated, the plaintiffs are not entitled to recover on their storage claim.

## II. *Conversion Claim*

Count II of the present complaint alleges—and the plaintiffs' response to the Government's motion to dismiss submits affidavits tending to support the allegation—that when the Government removed the seized property from the Yokum farm, the Government also removed, and later destroyed or disposed of, approximately 9,000 feet of copper pipe belonging to the

plaintiffs and having a value of approximately $9,000. The complaint also alleges that the Government removed the International Gradeall from the Yokum farm, that this equipment belonged to the plaintiffs, that the Government destroyed or otherwise disposed of the International Gradeall, and that the piece of equipment had a value of approximately $50,000.

The Government has submitted affidavits tending to show that no copper pipe was removed from the Yokum farm by the Government. The Government is silent with respect to the allegation in the complaint that the Government also removed from the Yokum farm, and subsequently destroyed or otherwise disposed of, an International Gradeall.

The complaint alleges that the copper pipe was removed from the Yokum farm in August 1984. Thus, these items were allegedly converted by the Government within the 6-year period immediately preceding the filing of the present complaint on May 29, 1985.

It is clear that there is an issue between the parties concerning the material fact as to whether the Government did or did not remove from the Yokum farm and convert approximately 9,000 feet of copper pipe belonging to the plaintiffs.

■ As the Government has never filed an answer in this case, and as the Government's filing in connection with the pending motion do not mention the gradeall, the Government has never taken the position on the question of whether the International Gradeall did or did not belong to the plaintiffs. In the present posture of the case, therefore, consideration of the plaintiffs' claim for the alleged conversion of the International Gradeall must be deferred for the time being.

The pending motion for summary judgment must be denied as to the plaintiffs' claim for the alleged conversion of the 9,000 feet of copper pipe and the International Gradeall.

*Conclusion*

For the reasons previously stated, the defendant's motion for summary judgment is denied as to Count II of the complaint. As the plaintiffs are not entitled to recover on Count I of the complaint, the pending motion is granted as to such count, and the complaint will be dismissed as to Count I upon the conclusion of the subsequent proceedings on Count II.

No costs.

IT IS SO ORDERED.