**Joseph E. McDONNAL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 511–84C.

United States Claims Court.

March 25, 1986.

**630**

Michael A. Larson, Seattle, Wash., for plaintiff.

Hillary A. Stern, with whom were Asst. Attys. Gen. Richard K. Willard and David M. Cohen, Washington, D.C., for defendant.

## OPINION

MOODY R. TIDWELL, III, Judge.

This is a contract case which comes before this court on Defendant's Motion for Summary Judgment. Plaintiff has alleged that defendant breached its land sale contract with plaintiff when by warranty deed it later conveyed less than the entire parcel of property as described in the contract of sale. After careful consideration of the parties' briefs and the submitted papers, the court grants Defendant's Motion for Summary Judgment.

## FACTS

This case involves a parcel of property located at 301 32nd Avenue East, Seattle, Washington (the "subject property"). Defendant, acting through the Department of Housing and Urban Development (HUD), obtained legal title to the subject property from the Federal National Mortgage Association (FNMA) by deed dated July 8, 1975. The FNMA–HUD deed contained a legal description of the subject property which read as follows:

> Lots 8 and 9, Block 7, Webster's Madison Street Addition to the City of Seattle, according to the plat recorded in Volume 10 of Plats, page 1, in King County, Washington: EXCEPT the West 75 feet thereof.

Plaintiff and his wife [1] purchased the subject property from HUD on June 19, 1977. The contract of sale contained the following brief legal description: "Lots 8 and 9, Block 7, WEBSTER'S MADISON STREET ADDITION TO THE CITY OF SEATTLE." The contract of sale made no mention of the exception to the west 75 feet as contained in the FNMA–HUD deed. The preliminary title policy issued by Transamerica Title Insurance Company (Transamerica) on July 28, 1977, also made no mention of the excepted 75 feet as contained in the FNMA–HUD deed.[2] Furthermore, plain-

---

**1.** Although the subject property was acquired by both plaintiff and his wife, plaintiff is the sole party in interest in this lawsuit, having previously acquired his wife's interest in the subject property in a marriage dissolution action. Therefore, all references to actions taken by both plaintiff and his wife will be referred to as actions taken by plaintiff solely unless his wife's actions are relevant to plaintiff's arguments.

**2.** The legal description contained in the preliminary title policy issued by Transamerica read:

> Lots 8 and 9 in Block 7 of Webster's Madison Street Addition, as per plat recorded in Volume 10 of Plats, on page 1, records of King County;
>
> Situate in the County of King, State of Washington.

tiff financed the acquisition through a loan obtained from University Federal Savings and Loan (UFS & L) which was secured by a Deed of Trust, dated August 9, 1977, which also make no mention of the excepted 75 feet.[3]

By letter dated August 26, 1977, HUD advised the King County Comptroller that it had sold the subject property to plaintiff and that future tax statements should be forwarded directly to plaintiff.[4] This arrangement was modified on October 6, 1977, when UFS & L notified the Comptroller that any future tax statements regarding the subject property should be forwarded to UFS & L as the lender.

On October 6, 1977, HUD delivered a warranty deed to plaintiff which contained a legal description of the subject property differing from the one in the contract of sale in that it excepted the west 75 feet as follows:

> Lots 8 and 9, Block 7, WEBSTER'S MADISON STREET ADDITION to the City of Seattle, according to the plat recorded in volume 10 of plats, page 1, in King County, Washington:
>
> Except the West 75 feet thereof.

Subsequently, the UFS & L revised the Deed of Trust securing its loan to reflect the change in the description of the subject property as follows:

> Lots 8 and 9, in Block 7 of Webster's Madison Street Addition, as per plat recorded in Volume 10 of Plats, page 1 records of King County; Situate in the County of King, State of Washington. EXCEPT the West 75 feet thereof.
>
> Rerecord of # 7708250137 to correct legal description

On January 10, 1978, UFS & L was supplied with a supplemental title report by Transamerica indicating that the legal description of the subject property now excepted the west 75 feet.[5] By letter dated March 16, 1978, UFS & L notified the King County Assessor's Office that the legal description of the subject property on both the supplemental title report provided by Transamerica and the plaintiff's deed listed "the exception of the West 75 feet thereof, however the tax statement [did] not." UFS & L requested that the County Assessor "check into this discrepancy" and notified the County Assessor's Office that they would not pay taxes on the subject property until the legal description was clarified.

On September 1, 1978, the County Assessor's Office concluded that "HUD made a mistake in their warranty deed by adding EXCEPT the West 75 feet thereof" and that the West 75 feet must have been "included in the sale." Consequently, the County Assessor's Office began to send the tax statements to HUD for the west 75 feet of the subject property. HUD forwarded the tax statements to UFS & L because it never had title to the west 75 feet and believed that it secured plaintiff's loan with UFS & L.

After learning from a HUD representative that the legal description of the subject property in HUD's files excepted the west 75 feet, UFS & L concluded that its legal description which also excepted the west 75 feet was correct. Therefore, neither HUD nor UFS & L paid the property taxes on the west 75 feet which remained unpaid until King County foreclosed on the excepted parcel in 1984 and transferred title to it by tax deed to Genessee, Inc.

---

3. The legal description contained in the UFS&L Deed of Trust dated August 9, 1977, read as follows:

> Lots 8 and 9, in Block 7 of Webster's Madison Street Addition, as per plat recorded in Volume 10 of Plats, page 1, records of King County; Situate in the County of King, State of Washington.

4. HUD's notice to the King County Comptroller contained a legal description of the subject property which read as follows:

> Lots 8 & 9, Block 7, Webster's Madison Street Addition, as per plat recorded in Volume 10 of Plats, page 1, records of King County, Washington.

5. The court notes that plaintiff did not purchase title insurance for his interest in the subject property.

In June of 1984, after transfer of title to Genessee by tax deed, plaintiff learned that he had not received title to the entire subject property when Genessee offered the west 75 feet of the subject property to plaintiff for $25,000. Not having the funds available, plaintiff arranged for a friend, Ms. Virginia Wyman, to purchase the 75 foot parcel for $25,000, who also agreed to sell the parcel to plaintiff if he would reimburse her within a reasonable period of time.

Based on these facts, plaintiff filed a Complaint in this court on October 3, 1984, contending that he was entitled to damages of $25,000 because HUD breached its contract when it failed to convey the entire subject property pursuant to its land sale contract with plaintiff.

Defendant filed a Motion for Summary Judgment on January 2, 1985, on two grounds. First, defendant contended that this court lacked jurisdiction over plaintiff's claim because plaintiff seeks damages for alleged non-contractual injuries caused ·by governmental acts or omissions which is an action that sounds in tort. Second, defendant contended that this action was barred by the statute of limitations because plaintiff's contract with HUD was breached, if at all, upon delivery of the October 6, 1977, deed which conveyed property less in quantity than the property for which plaintiff had contracted to purchase.

## DISCUSSION

At the outset, the court will address defendant's assertion that plaintiff's claims is time-barred by the statute of limitations, because if defendant is correct, this court will be without the authority to resolve the other issues pending. The applicable statute, 28 U.S.C. § 2501 (1982), states:

> Every claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

It has long been settled that the statute of limitations is jurisdictional, and that the conditions upon which the government con-

sents to be sued must be strictly observed to avoid the prosecution of stale claims which can prejudice the defendant. *Kirby v. United States,* 201 Ct.Cl. 527, 539 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974).

■ The analysis must begin with a discussion of the date upon which plaintiff's claim first accrued. The date of accrual is "the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Oceanic Steamship Co. v. United States,* 165 Ct.Cl. 217, 225 (1964); *see also Kirby v. United States,* 201 Ct.Cl. 527, 532 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974), and *Sauer v. United States,* 173 Ct.Cl. 642, 647, 354 F.2d 302, 304 (1965). Plaintiff filed this action on October 3, 1984. Therefore, in order for this action to avoid being barred by the statute of limitations, plaintiff's claim must have accrued after October 3, 1978.

Defendant argued that plaintiff's claim accrued on October 6, 1977, the date upon which HUD delivered the deed which conveyed less property than the property for which plaintiff had contracted. In his opposition brief, plaintiff contended that his claims did not accrue until at least 1980, because "[a]n implied duty of defendant's contract of conveyance was to notify tax authorities that the land had been sold and tax statements should be forwarded to the new owner," and that this "obligation was not completed until 1980." The court notes that plaintiff based this contention on the allegation that defendant did not notify the tax authorities of the sale until 1980. However, in his own brief, plaintiff stated the following: "On August 26, 1977, HUD advised the King County Comptroller that plaintiff was the new owner of the lots as described in the contract and that tax statements should be forwarded directly to plaintiff." Thus, the factual allegation upon which this contention is based, is apparently contradicted by plaintiff's own statement of fact.

■ The court finds all events which fixed the liability of defendant occurred on October 6, 1977, when HUD delivered the deed which conveyed less property than that which plaintiff contracted to purchase. There is no requirement that a plaintiff must wait until each and every duty contained in a contract is either performed or breached before a cause of action may be brought. *Soriano v. United States,* 352 U.S. 270, 275, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). For the court to impose such a requirement as a prerequisite to the jurisdiction of the Claims Court "would be a limitless extension of the period of limitation that Congress expressly provided for the prosecution of claims against the government...." *Id.* Thus, the court concludes that plaintiff's claim accrued on October 6, 1977 and that he could have instituted an action for breach of contract on October 6, 1977, and for six years afterwards.

■ The court's conclusion that the plaintiff's cause of action accrued on October 6, 1977, does not resolve the issue because plaintiff also contended that the statute of limitations was tolled because the facts necessary to determine the very existence of his right to relief were unavailable to him. It is true that in certain circumstances the statute of limitations will be tolled when an accrual date has been ascertained, and plaintiff does not know of his claim. However, mere ignorance of rights which should be known is not enough. *Navajo Freight Lines, Inc. v. United States,* 176 Ct.Cl. 1265, 1270 (1966); *Dion v. United States,* 137 Ct.Cl. 166, 167 (1956). In such situations, the plaintiff must either show that defendant has (1) concealed its action with the result that plaintiff was unaware of its existence, or (2) that its injury was "inherently unknowable" at the accrual date. *Japanese War Notes Claimants Ass'n v. United States,* 178 Ct.Cl. 630, 634, 373 F.2d 356, 359, *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967). Moreover, plaintiff in such a situation has the burden of proof to establish either that the defendant has concealed its acts with the result

that plaintiff was unaware of their existence or that the injury was inherently unknowable at the accrual date. *Braude v. United States,* 218 Ct.Cl. 270, 274, 585 F.2d 1049, 1051 (1978).

In the case at bar, plaintiff contended that his claim was inherently unknowable. Plaintiff also contended that the government concealed its acts, with the result that plaintiff was unaware of defendant's breach of contract. As this court noted in *Braude,* plaintiff has the burden of proof with respect to each of these contentions.

### A. *Inherently Unknowable*

■ Plaintiff contended that his claim was inherently unknowable because he "was not trained in reading or understanding legal descriptions," and because he did not know the essential facts which would put him "on notice that a portion of the property which he enjoyed was not conveyed as promised." The court finds no merit to plaintiff's argument. In *Japanese War Notes,* this court set forth the test to determine when the statute of limitations would begin to run when an injury was "inherently unknowable." The court stated that "[i]n this situation the statute will not begin to run until plaintiff learns or reasonably should have learned of his cause of action." *Id.,* 178 Ct.Cl. at 634, 373 F.2d at 359. The court also noted that an example of the type of injury that would qualify as inherently unknowable, would be "when defendant delivers the wrong type of fruit tree to plaintiff and the wrong cannot be determined until the tree bears fruit." *Id.* at 634, 373 F.2d at 359. In the court's example, simply looking at the tree would not reveal the injurious contractual breach. However, in the instant case, plaintiff had ample opportunity to discover the injurious contractual breach. Indeed, by simply looking at the double-spaced legal description on the one page, single-spaced October 6, 1977 HUD–McDonnal deed, plaintiff or his agent would have or *reasonably should have* learned of his cause of action.

In an attempt to further support his position, plaintiff contended that he "was not provided with a copy of the deed" and that he "had no idea nor was he given any reason to believe that another party would claim ownership of a portion of the lot." The court finds it interesting to note that plaintiff did not contend that he was not shown the October 6, 1977 deed, at the time of delivery, but merely contended that he was not provided with a copy of the deed. Furthermore, the court finds it incredulous for plaintiff to argue in light of the surrounding circumstances that he had "no idea" that someone else might claim title to the west 75 feet of the subject property. Plaintiff acknowledged that he and his wife were asked by UFS & L to sign the amended Deed of Trust indicating that the legal description of the subject property now "excepted the west 75 feet." However, in his brief, plaintiff made the following statement: "Understanding that signing the amendment to the deed of trust would only correct the legal description, the plaintiffs [sic] signed the document next to the legal description." Thus, although plaintiff apparently acknowledged his awareness of the legal descriptions contained in the land sales contract, the HUD–McDonnal deed, and the UFS & L amended Deed of Trust, the court finds that plaintiff was, in essence, arguing that he was unaware of their legal significance. However, plaintiff's ignorance of his legal rights is no excuse for failing to timely raise his claims. *Braude v. United States*, 218 Ct.Cl. 270, 278, 585 F.2d 1049, 1054 (1978).

The court is not unmindful of plaintiff's position. However, as this court stated in *Braude:*

> The very nature of statutes of limitations is that they deny a claim regardless of its merit. This often seems unfair. But it is the judgment of those vested with the authority to make our laws that such statutes are necessary in order to insure prompt handling of claims and to prevent actions from being withheld until such time that the memories of witnesses and other types of evidence have become ob-

scured or unavailable by the passage of time. Furthermore, the policy considerations behind such statutes contemplate that *ignorance of rights which should have been known is not enough to toll their running.* (Emphasis added.)

*Id.* at 278, 585 F.2d at 1054.

Thus, the court rejects plaintiff's argument that the statute of limitations was tolled because plaintiff's claim was "inherently unknowable." To hold otherwise would do violence to the judicial precedent of this court.

## B. *Concealment*

Plaintiff contended that defendant concealed its breach when it notified tax authorities that the entire lot had been conveyed as provided in the contract when in fact it had not, and again when it failed to disclose known facts to plaintiff's lender (UFS & L) when requested to do so. The court disagrees.

■ As to his first allegation, plaintiff stated that when UFS & L contacted defendant on July 19, 1980, to clarify the situation, "HUD represented that every document in their complete files excluded the west 75 feet of the property." Plaintiff contended that despite this representation, "HUD's file contained the sales contract and the notice provided to the King County Assessor's Office which included the west half of the lot." Because of that representation, plaintiff contended that UFS & L terminated its efforts to clarify the incorrect descriptions. The court fails to find this argument persuasive.

As to plaintiff's second allegation, the court fails to see how the understanding of the County Assessor's Office, with respect to plaintiff's ownership of the property, is relevant to plaintiff's knowledge and understanding. Nevertheless, even the County Assessor's Office had concluded by September 1, 1978, that defendant had excepted the west 75 feet in its October 6, 1977 deed. Hence, if plaintiff's knowledge

is somehow tied to the knowledge of the County Assessor's Office, his injury was known as of September 1, 1978, still beyond the six year statute of limitations period.

Even if the court were to conclude that the statute of limitations had been tolled by concealment, the statute may begin to run once the plaintiff is on inquiry that he has a potential claim. *Braude v. United States*, 218 Ct.Cl. 270, 278, 585 F.2d 1049, 1054 (1978); *Japanese War Notes Claimants Ass'n v. United States*, 178 Ct.Cl. 630, 634; 373 F.2d 356, 359, *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967). The court finds that plaintiff was put on inquiry notice on at least two occasions. First, plaintiff admitted that he executed the revised Deed of Trust which contained the exception of the west 75 feet, thus putting plaintiff on inquiry notice as to why there needed to be a change in the legal description and especially as to what the change meant. Second, plaintiff admitted that the HUD–McDonnal deed dated October 6, 1977, contained the exception of the west 75 feet. Here again, plaintiff was put on inquiry as to what effect this had on his legal interest. Thus, the court concludes from the foregoing facts that plaintiff was on inquiry that he had a potential claim at a date prior to six years before he filed his petition.

CONCLUSION

The court concludes that plaintiff's cause of action accrued at a date more than six years prior to his instituting suit in this court. Furthermore, the court concludes that the statute of limitations was not tolled because plaintiff's claim was neither inherently unknowable nor concealed by defendant. Therefore, plaintiff's claim is time-barred by the Statute of Limitations. Accordingly, Defendant's Motion for Summary Judgment is granted and the clerk of the court is directed to dismiss the Complaint. Costs to defendant.