**Lynette ROGERS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 697–87–C.

United States Claims Court.

Nov. 1, 1988.

Lynette Rogers, Mountain View, Cal., pro se.

Agnes M. Brown, Washington, D.C., with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen and Robert A. Reutershan, for defendant. Noah Connell, Dept. of Labor, and Alan Johnson, Veteran's Admin., of counsel.

## OPINION & ORDER

TURNER, Judge.

Lynette Rogers, a nurse and a former employee of the Veterans Administration Medical Center in Palo Alto, California (VAMC), instituted suit on November 10,

1987. Her claims for damages and other relief rest principally upon events which occurred during her tenure as a VA nurse, including her ultimate dismissal from VA employment on November 8, 1975. The remainder of her suit concerns the denial by the Department of Labor's Office of Workers Compensation Programs (OWCP) of her disability claims, the last denial having become final on October 20, 1978.

On February 16, 1988, defendant filed a motion to dismiss. This opinion addresses defendant's motion.

A number of plaintiff's claims have already been the subject of fully-litigated federal suits between these parties and are, therefore, barred by the doctrine of res judicata. Even if none of her claims were precluded by former adjudications, all of her claims would nevertheless be barred by either the applicable statute of limitations or the lack of Claims Court jurisdiction over them. Accordingly, the defendant's motion to dismiss is granted.

# I

Plaintiff was 45 years old when she was hired as a nurse by the Veterans Administration Medical Center in Palo Alto, California on April 15, 1968.[1] C. 4, ¶ 11. She had immigrated to the United States in 1960 and had become a citizen in 1966. C. 3, ¶ 9. Prior to her arrival at VAMC, she had attended San Jose State University and had worked at the Kaiser Hospital in San Francisco. C. 9, ¶ 32–4.

While at San Jose State, plaintiff had filed a grievance alleging that some members of the nursing faculty treated her prejudicially because she was a foreigner. C. 9–10, ¶ 34. Later, when she worked for Kaiser Hospital in San Francisco, plaintiff was asked to resign. C. 9, ¶ 32. She now believes that these two episodes found their way into her personnel records at VAMC, and that she was treated unfairly

based upon them. C. 7–8, ¶ 25–6; C. 10, ¶ 38.

Plaintiff's work as a staff nurse at VAMC proceeded without incident from April 1968 until February 1971. During that time, she received positive performance evaluations as well as salary increases. C. 10, ¶ 36–7. In February 1971, she was named "Head Nurse" of Ward 1B5 of VAMC. D.A. 1, ¶ 1. During her tenure as Head Nurse of Ward 1B5, problems began to develop. Staff nurses subordinate to plaintiff reported having difficulty adjusting to the many and frequent changes she instituted. D.A. 1, ¶ 4. Supervisors and administrators complained that they were not being consulted about changes. *Id.* On December 9, 1971, a "formal counseling session" was held, in which plaintiff's superiors sought to discuss and clear up problems that had arisen. C. 15, ¶ 5–6. Supervisors viewed the counseling session as a presentation of suggestions and constructive criticism while plaintiff viewed it as a presentation of charges to which she demanded a hearing to respond. C. 15–16, ¶ 6–8; D.A. 1–4, 5 ¶ 6, 8 ¶ 2.

The situation deteriorated and on March 18, 1972, plaintiff was reassigned to the position of Staff Nurse in another ward. D.A. 5 ¶ 8; C. 16–17 ¶ 13. Plaintiff demanded a hearing, but VAMC denied the request, saying that although plaintiff would be entitled to a hearing in case of demotion, the reassignment in question was not a demotion because it was not accompanied by a decrease in salary. C. 17 ¶ 14–16; P.A. 5–6. Ultimately, plaintiff protested her reassignment through VA grievance procedures; the hospital director for VAMC sustained her reassignment on April 18, 1972. D.A. 6 ¶ 8.

Meanwhile, plaintiff petitioned her representative in Congress and President Nixon in regard to her alleged mistreatment at VAMC. C. 18 ¶ 18; C. 19 ¶ 22. As a result of this correspondence, a team from VA headquarters in Washington visited VAMC

---

1. The facts set forth in text have been gleaned from the original complaint, plaintiff's opposition to defendant's motion to dismiss, and prior decisions on plaintiff's claims rendered by other fora and supplied by the parties. References are to the original complaint (C.), the appendix to defendant's motion to dismiss (D.A.), the appendix to plaintiff's opposition (P.A.), and plaintiff's opposition (P.O.).

to investigate her claims. C. 19 ¶ 23. The inspection team, after meeting with plaintiff and her representative for five hours, concurred in VAMC's decision to reassign her. D.A. 20–30. Plaintiff now believes that VAMC mistreated her following this episode in reprisal for her exercise of the First Amendment right to petition. C. 22 ¶ 38.

On March 3, 1973, Rogers was informed that her salary step increase would be withheld. D.A. 8; C. 20 ¶ 27. She responded by filing suit in the United States District Court for the Northern District of California against the administrator of VAMC and her colleagues and superiors. In that suit, plaintiff sought damages of $150,000 as well as declaratory and injunctive relief in connection with alleged tortious conduct of her colleagues and superiors, and their alleged denial of her due process rights under the Fifth Amendment. D.A. 31–49. This action was stayed pending her presentation of grievances through VA processes. C. 21 ¶ 32; P.A. 19.

On February 6, 1975, following two additional denials of her salary step increases, C. 21 ¶ 34, the VA sent plaintiff a notice proposing her discharge for various acts of professional misconduct, including the altering of a patient's medication without physician's approval. D.A. 59. Proceedings were conducted pursuant to VA regulations, and plaintiff was dismissed on November 8, 1975, following affirmance of her dismissal on appeal to the Administrator of Veterans Affairs. D.A. 62–6.

On September 30, 1976, Rogers filed an amended complaint in her earlier California federal court action. D.A. 50. The amended complaint alleged procedural irregularities in VAMC's handling of her dismissal, as well as violations of her due process rights, and sought reinstatement and back pay. D.A. 50, 57. The district court, following a hearing, granted summary judgment in favor of the defendants on February 16, 1977. D.A. 68.

Rogers sought to reopen the 1977 action by filing a petition in the United States District Court for the Northern District of California on November 18, 1983. D.A. 71.

The petition alleged that the VA had perpetrated a fraud upon the court. D.A. 76–7. The district court denied the petition on April 19, 1984. D.A. 80–83. Plaintiff sought reinstatement of her 1983 petition by the district court on June 20, 1985. D.A. 86. This motion was denied and attorneys' fees were assessed against Rogers' counsel. *Id.* The United States Court of Appeals for the Ninth Circuit affirmed the district court's denial of her motion for reinstatement on March 13, 1987. D.A. 88–9.

Meanwhile, plaintiff had begun pursuing disability claims against the VA in March 1973. In her applications for disability benefits she claimed to suffer from "continual stress and hypertension" due to the harassment, intimidation and coercion dealt to her by supervisors at VAMC. *Rogers v. United States Department of Labor,* 607 F.Supp. 697, 698 (N.D.Cal.1985). The DOL ultimately denied her claims for benefits. On October 20, 1978, DOL's hearing representative upheld an earlier OWCP finding that Rogers suffered from an obsessive-compulsive personality disorder which was of a pre-existing nature and, therefore, not employment-related. *Id.*

Rogers subsequently commenced suit against DOL in the United States District Court for the Northern District of California for alleged Privacy Act violations by OWCP in its processing of her disability claims. In this suit, Rogers sought correction of her records as well as statutory damages. Summary judgment dismissing her claims was entered by the district court on April 30, 1985. *Rogers v. United States Dept. of Labor,* 607 F.Supp. 697 (N.D.Cal. 1985).

In the meantime, Rogers had learned in 1979, as the result of a Freedom of Information Act request, P.O. 17, that her VA personnel folder contained two negative references which she believes, by "process of elimination," came from San Jose State and Kaiser Hospital. C. 8 ¶ 26. She now believes that the VA improperly provided this "secret information" to the psychologist, a Dr. Burr, who examined her pursuant to her disability claims. *Id.* She fur-

ther asserts that, since this "secret information" was "fraudulently concealed" from her but shown to Dr. Burr, she was denied her due process right of confrontation in the OWCP proceedings. C. 7–8, ¶ 24–6. Rogers' most recent litigation effort was to file this action on November 10, 1987.

## II

Rogers' current suit consists of claims against the Veterans Administration and the Department of Labor. Both are alleged to have violated Rogers' due process rights under the Fifth Amendment, and to have breached implied contractual duties owed to her. In addition, plaintiff alleges that VA violated her First Amendment rights, as well as her rights under the Freedom of Information Act. Finally, she alleges Privacy Act violations by DOL. C. 1–39. She seeks back pay, attorneys' fees, correction of her VA and DOL records to remove the "stigma-type labels" of "professional misconduct," C. 37, and "obsessive-compulsive personality disorder," C. 7 ¶ 23, and damages against DOL for alleged Privacy Act and Federal Employment Compensation Act violations. C. 38. Plaintiff also seeks an "independent determination" by this court of her entitlement to retirement benefits under the Civil Service Retirement Act. C. 38.

## III

■ In her complaint, Rogers asks this court to "review" the "plainly wrong" decisions of the Ninth Circuit and district courts. C. 12, ¶ 49. This court is without authority to conduct the review requested. Nor is a *de novo* examination of those tribunals' decisions permissible because of the res judicata doctrine.

■ The doctrine of res judicata exists in order to conserve judicial resources, to foster reliance on the finality of judicial action, to promote the public interest in ending controversies which have been litigated to a final conclusion, and to protect parties from the expense and vexation of having to defend repetitive lawsuits over the same subject matter. *Montana v.*

*United States,* 440 U.S. 147, 153–4, 99 S.Ct. 970, 973–4, 59 L.Ed.2d 210 (1979); *Stone v. United States,* 4 Cl.Ct. 250, 263 (1984); *Baskett v. United States,* 2 Cl.Ct. 356, 364 (1983). Res judicata bars relitigation between the same parties of causes of action which were decided on the merits by a court of competent jurisdiction. *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Ivary v. United States,* 3 Cl.Ct. 663, 665 (1983). The doctrine also bars claims which were not, but could have been, raised in the prior lawsuit. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Ivary v. United States,* 3 Cl.Ct. 663, 665 (1983). Proper invocation of the res judicata doctrine requires the existence of three factors: (1) legally identical parties, (2) substantially related transactions or events, and (3) a prior "full and fair opportunity to litigate." *Reidt v. United States,* 13 Cl.Ct. 741, 744 (1987); *J.C. Bass v. United States,* 11 Cl.Ct. 295, 299–300 (1986).

In this case, each of the res judicata factors applies. These same parties have already faced one another in court with regard to the transactions and events surrounding plaintiff's employment history at and discharge from VAMC. Similarly, plaintiff has previously sued the DOL, seeking damages and a correction of records, with regard to its denial of her disability claims. Both suits resulted in the entry of summary judgment adverse to plaintiff. As this court has noted, "a grant of summary judgment clearly is an adjudication on the merits of a case." *Stone v. United States,* 4 Cl.Ct. at 264, 268 (1984). Rogers has thus had the opportunity to fully and fairly litigate these claims. Accordingly, this case is an appropriate one for the application of res judicata; it remains but to determine precisely which among her instant claims are barred by that doctrine.

■ The bulk of plaintiff's 39-page Complaint concerns procedural violations and due process affronts allegedly committed by VA officials during her nearly-eight-year tenure at VAMC, including allegations

of due process denials in her dismissal proceedings. All of these claims are barred by res judicata, since they arise from the same transactional facts as the claims decided adversely to her in 1977. So, too, is her claim that the VA breached an "implied contract" to treat her fairly, for merely presenting the same argument in somewhat different terms is not sufficient to avoid the res judicata bar. *Ivary v. United States,* 3 Cl.Ct. 663, 666 (1983); *see also Bander v. United States,* 161 Ct.Cl. 475, 482 (1963).

Plaintiff's Privacy Act claims against DOL are likewise barred by res judicata, since she has already fully litigated a Privacy Act suit against DOL, challenging the disposition of her disability claims. *Rogers v. United States Department of Labor,* 607 F.Supp. 697 (N.D.Cal.1985). Rogers' instant claims for money damages and correction of her records under the Privacy Act were already decided adversely to her in that suit. *Id.* But even if her Privacy Act claims were not barred by the former adjudication, this court lacks subject matter jurisdiction over them. See part V below.

## IV

■ Every claim over which this court has jurisdiction "is barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. This statute of limitations is jurisdictional and cannot be waived. *Farrell v. United States,* 9 Cl.Ct. 757, 758–59 (1986); *Yokum v. United States,* 9 Cl.Ct. 602, 608 (1986). A claim first accrues "when all events have occurred which affect the alleged liability of the United States and entitle the claimant to institute an action." *Huntzinger v. United States,* 9 Cl.Ct. 90, 94 (1985), *affirmed,* 809 F.2d 787 (Fed.Cir. 1986), *cert. denied,* — U.S. —, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987); *Kirby v. United States,* 201 Ct.Cl. 527, 532 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974).

■ The statute of limitations may be tolled in a case involving concealment, but only for so long as the plaintiff is unaware that she has a potential claim. *Welcker v. United States,* 752 F.2d 1577, 1580 (Fed. Cir.), *cert. denied,* 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985). In wrongful discharge cases, the cause of action accrues on the date of discharge. *Huntzinger v. United States,* 9 Cl.Ct. at 94.

■ The policy goals behind the statute of limitations include the assurance of prompt handling of claims as well as the avoidance of suits in which "the memories of witnesses and other types of evidence have become obscured or unavailable by the passage of time." *Braude v. United States,* 218 Ct.Cl. 270, 278, 585 F.2d 1049, 1054 (1978); *quoted in McDonnal v. United States,* 9 Cl.Ct. 629, 634 (1986). By its nature, therefore, the statute of limitations denies claims without inquiry into their merits. *Braude,* 218 Ct.Cl. at 278; *McDonnal,* 9 Cl.Ct. at 634.

■ Application of these principles to the instant case yields the conclusion that the bulk of plaintiff's claims are time-barred. All of the claims relating to her discharge from VAMC accrued on November 8, 1975 and thus expired on November 8, 1981. Plaintiff contends that the statute of limitations should be tolled because of the government's "fraudulent concealment of secret information" which she did not learn of until filing a Freedom of Information Act request in 1979. Regardless of the merits of this contention, the result would be the same since a six-year limitations period measured from 1979 would still have expired well before the filing of the present action. Similarly, claims arising from DOL's denial of Rogers' disability claims accrued on October 20, 1978 and expired on October 20, 1984, well before this action was filed.

## V

The remainder of plaintiff's claims must be dismissed for lack of subject matter jurisdiction.[2]

---

2. Even if this court otherwise had subject matter jurisdiction over the remaining claims, they would be barred by the applicable six-year statute of limitations, 28 U.S.C. § 2501.

■ Plaintiff's claim that VAMC infringed her First Amendment rights does not fall within the jurisdiction of the Claims Court. *Rosano v. United States,* 9 Cl.Ct. 137, 142 (1985), *aff'd,* 800 F.2d 1126 (Fed. Cir.1986), *cert. denied,* 480 U.S. 907, 107 S.Ct. 1350, 94 L.Ed.2d 521 (1987). Nor may this court entertain her claim against DOL under the Federal Employees' Compensation Act, for that legislation specifically precludes judicial review. 5 U.S.C. § 8128(b); *Chapman v. United States,* 204 Ct.Cl. 815, 816 (1974). Neither can this court hear Rogers' Freedom of Information or Privacy Act claims, as Congress has vested jurisdiction over these matters in the district courts. *See* 5 U.S.C. § 552(a)(4)(B) and § 552a(g)(1); *Gaines v. United States,* 226 Ct.Cl. 691, 692 (1981); *Schmidt v. United States,* 3 Cl.Ct. 190, 194 (1983). Nor can this court entertain Rogers' claims for breach of implied contract by VA, based on the alleged violation of verbal assurances made to her by VAMC superiors, since

> Federal officials who by act or word generate expectations in the persons they employ, and then disappoint them, do not *ipso facto* create a contract liability running from the Federal Government to the employee, as they might if the employer were not the government.

*Shaw v. United States,* 226 Ct.Cl. 240, 251, 640 F.2d 1254, 1260 (1981); *quoted in Schuhl v. United States,* 3 Cl.Ct. 207, 212 (1983).

■ Finally, this court lacks jurisdiction to entertain plaintiff's prayer for an independent determination of her entitlement to federal retirement benefits under the Civil Service Retirement Act. 5 U.S.C. § 8331 *et seq.* That statute prescribes initial determination of eligibility by the Office of Personnel Management, 5 U.S.C. § 8347(c), followed by appeal to the Merit Systems Protection Board (MSPB). 5 U.S.C. § 8347(d). Judicial review is available, under current law, only after MSPB's decision and only in the Federal Circuit. 5 U.S.C. § 7703(b). However, since Rogers was terminated prior to January 11, 1979 (the effective date of the present statute), prior law would govern, and this court would have jurisdic-

tion to hear the appeal. *Gaskins v. United States,* 221 Ct.Cl. 918, 919–20 (1979); *Moody v. United States,* 10 Cl.Ct. 699, 700 n. 1 (1986); *Allsbrook v. United States,* 1 Cl.Ct. 194, 195 n. 1 (1982). The problem is that Rogers has not first pursued this claim through OPM and MSPB, which is the prerequisite for any examination of it by this court.

### VI

For the reasons stated above, defendant's motion to dismiss the complaint is granted. Judgment shall be entered accordingly.